KISSENA PARK CORPORATION v. FRADKIN.

(Supreme Court, Appellate Term, Second Department.    May 23, 1913.)

1. VENDOR AND PURCHASER (§ 44*)—CONTRACT—EVIDENCE.
    Evidence held to show that defendant had not contracted to purchase real estate from the plaintiff, but had only taken an option to purchase.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

2. VENDOR AND PURCHASER (§ 25*)—VALIDITY OF CONTRACT—DELIVERY.
    Where a written agreement for the purchase of real estate on installments, which recited that the first installment had been paid, was not to be delivered to the purchaser until the payment had been made, it did not become binding until after that time.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 30; Dec. Dig. § 25.*]

Appeal from Municipal Court, Borough of Queens, Second District.

Action by the Kissena Park Corporation against Katherine E. Fradkin. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Argued May term, 1913, before CRANE, KAPPER, and KELBY, JJ.

William Paul Buchler of New York City (Harrie C. Manheim, of New York City, of counsel), for appellant.

James E. Wilkinson, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PER CURIAM. The judgment in this case must be reversed. Action is brought to recover $450, the first installment upon a contract to buy lots for $4,617. The contract acknowledged its receipt, but only $10 was paid in fact.

[1] The defendant is a milliner at 1290 Madison avenue, Manhattan. On June 13, 1912, she was invited by a customer named Mrs. Heinnerline to luncheon at the Hotel Astor and then for an automobile ride. Mrs. Heinnerline said she was going to look at some lots she had purchased in Kissena Park. The machine, it appears, was furnished by the plaintiff's agents, and one of the sales agents, Otis W. Rowe, went along also. Mrs. Heinnerline, when cross-examined, admitted that she was to get a commission if the defendant bought any lots. Upon arriving at the property the defendant was persuaded to take an option on inside lots for $2,200, which she did by signing a printed form, which Rowe produced, and paying him $10. This was not a binding contract, but an optional agreement; she could take the property or not, as she pleased. The memorandum of sale, or option, as it has been called, while in the form of a contract of purchase, was not a binding contract, as it was unilateral; the Paris-Hencken Company (the agents) reserving the right to cancel it within 30 days for any reason. However, the testimony shows that it was considered by all parties as an option only. Subsequently the defendant visited the property again with Rowe, and thought she would like two corner lots, in place of the inside ones previously selected. On June 18th, while busy with customers, she testified that Rowe came to her store and presented to her what she supposed was an option on these corner lots, but what now turns out to be a formal contract of purchase for $4,617, acknowledging the receipt of $460. No money was paid, except the $10 which had been given Rowe five days before. The defendant says Rowe did not read the paper to her, or permit her to read it, and Rowe himself swears that he only read a portion of it, and took it away without leaving a copy with her. This action is for the $450, the first payment under the alleged contract. On the one side, we have the agent's testimony that the defendant knowingly signed a contract; on the other, we have the defendant's testimony that she was led to believe it was an option, and in this she is corroborated by the fact that the paper was not read to her, she was not permitted to read it, was furnished with no copy, and did not pay the installment recited in it to have been received.

[2] If all that Rowe say be true, the paper was never to be treated as a contract until the first installment was paid, as he testified that the contract would not be delivered to the defendant until the first installment had been made. The judgment which was rendered for the plaintiff was contrary to the evidence, and must be reversed. On the evidence before us, the complaint should have been dismissed.

Judgment reversed, and new trial granted; costs to appellant to abide the event.